UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

TERIZA SHEHATOU, INDIV.        )
CINDY LOUKA PPA, TERIZA        )        CIVIL ACTION
SHEHATOU AND SALLY LOUKA, PPA  )        No:  05-30195 KPN
TERIZA SHEHATOU                )
            PLAINTIFFS          )
Vs                             )
                               )
                               )
CHERYL L. SCHARDT, JAY A.      )
HOPKINS, P. KEYBURN HOLLISTER, )
JOHN R. GOBEL, ALLSTATE        )
INSURANCE COMPANY AND          )
COMMERCE INSURANCE COMPANY     )
            DEFENDANTS          )


## DEFENDANT COMMERCE INSURANCE CO., INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS

### I.    INTRODUCTION

The underlying claims arise out of an automobile accident which occurred on or about May 21, 2003, at or near the intersection of East Housatonic Street and Wendell Avenue in Pittsfield, MA.  Defendant Jay Hopkins ("Hopkins") was operating a vehicle, owned by Defendant Cheryl Schardt ("Schardt"), which was involved in the collision.  Defendant John Gobel ("Gobel") was operating a vehicle, owned by Defendant P Keyburn Hollister ("Hollister"), which was also involved in the collision.

Plaintiff Teriza Shehatou was a passenger in the vehicle operated by Defendant Gobel. Plaintiff Shehatou alleges having suffered physical injury as a result of the accident and has filed a claim in the United States District Court for the District of Massachusetts on behalf of herself and her two minor children, Plaintiffs Cindy Louka and Sally Louka (collectively "Plaintiffs"), against Defendants Schardt, Hopkins, Hollister, Gobel, Allstate Insurance Company and Commerce Insurance Company alleging negligence, loss of parental consortium, and violations of G.L. c. 93A and 176D. The Plaintiffs' made a demand on Commerce to settle this claim. Commerce has made settlement offers, and its offers have been refused by the Plaintiffs.

The Plaintiffs are simultaneously pursuing their 93A and 176D claims against Commerce and their personal injury and loss of parental consortium claims against the other Defendants. The Massachusetts Appeals Court has specifically deemed this type of litigation procedurally unwarranted and has concluded that an insurer should not be required to defend a bad faith claim prior to adjudication of liability and damages, if any.

## II.   ARGUMENT

**A.** A CLAIM FOR BAD FAITH SETTLEMENT PRACTICES
PURSUANT TO GENERAL LAWS CHAPTER 93A AND 176D IS
NOT RIPE FOR ADJUDICATION UNTIL AFTER THE
UNDERLYING TORT ACTION IS SETTLED OR FINALLY
ADJUDICATED.   THEREFORE, PLAINTIFF'S COMPLAINT
AGAINST COMMERCE MUST BE STAYED UNTIL THE PERSONAL
INJURY AND LOSS OF PARENTAL CONSORTIUM CLAIMS
AGAINST THE OTHER DEFENDANTS ARE RESOLVED.

A number of Massachusetts courts have concluded that
staying 93A and 176D proceedings against insurers is a sensible
approach pending resolution of the underlying claim.   The U.S.
District Court for the District of Massachusetts noted in *Rurak
v. Medical Professional Mutual Ins., Co.*, 2003 WL 21212721 (D.
Mass), that such a stay is often "employed to obviate difficult
attorney-client and work product issues" and "conserve[s]
judicial resources."   Moreover, several single justices of the
Massachusetts Appeals Court have repeatedly held that it is
improper for a plaintiff to bring a Chapter 93A or Chapter 176D
claim before the underlying tort action is finally adjudicated.
*See Gross v. Liberty Mutual Insurance Company*, Appeals Court No.
89-0138 (April 24, 1984) (Kass, J.); *Beecher v. Pawtucket Mutual
Insurance Company* Appeals Court No. 89-J-672 (September 2, 1989)
(Kass, J.); *Coyne v. Jan Co.*, Appeals Court No. 87-0303 (June
16, 1987) (Grant, J.).   Furthermore, the several single justices
of the Massachusetts Appeals Court have routinely concluded

that, when Chapter 93A claims are brought simultaneously with the underlying tort action, discovery on the 93A count should be stayed until the underlying tort claim is concluded.

In *Gross v. Liberty Mutual Insurance Company*, Appeals Court No. 89-0138 (April 24, 1984) (Kass, J.), the court noted that the commencement of a Chapter 93A and 176D claim prior to the conclusion of the underlying tort action is premature. In staying all discovery on the Chapter 93A and 176D claims, the court concluded that "there ought to be no access to ... [the insurer's] files until the underlying civil action has been determined." *Id.* at 2.   Likewise, in *Beecher v. Pawtucket Mutual Insurance Company*, Appeals Court No. 89-J-672 (September 2, 1989) (Kass, J.), the court noted that, "to authorize discovery in an unfair settlement claim action before the underlying claim has been established is to get the cases in the wrong order." *Id.* at 1.

The clear intent of Massachusetts courts is that chapter 93A and 176D claims which premise liability on the lack of a reasonable offer are not ripe and should not be filed until such time as the underlying tort action is finally adjudicated as was demonstrated by the holding in *Coyne v. Jan Co.*, Appeals Court No. 87-0303 (June 16, 1987) (Grant, J.).   In *Coyne*, court issued a protective order staying all discovery concerning an unfair

settlement claim "until final disposition" of the underlying tort action. *See also Gregory S. Lassell v. John A. Laidlaw and Commerce Insurance Company*, 92-J-448 (July 1, 1991) (Perretta, J.).

Plaintiffs' attempt to litigate their alleged bad faith claim against Commerce simultaneously with the underlying tort action against its insured appears to be a tactical maneuver to pressure Commerce to settle Plaintiff Shehatou's bodily injury claim and her children's loss of parental consortium claims on terms favorable to them to avoid the threat of multiple damages. Such litigation is disfavored by our courts and if permitted, would result in great prejudice to the insured defendant and Commerce. The Appeals Court has made it clear that an unfair settlement claim against a tortfeasor's insurer is not ripe or proper until the underlying claim is settled or tried to a verdict. Further, Commerce should not be subjected to the discovery of its employees' evaluations as to the value of a pending case prior to adjudication of liability and damages, if any. Such discovery would provide the plaintiffs with an improper advantage in negotiations and would discourage insurers from honestly evaluating and recording their impressions as to the value of a pending case.

Finally, while some cases have permitted simultaneous discovery and trial of 93A cases, they involve a single defendant and the count which forms the basis of the underlying action also forms the factual basis of the 93A claim. *See e.g., Wyler v Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563 (1993). In *Wyler*, bifurcation of the underlying and 93A claims was not favored because the same facts were being tried with respect to both counts. Conversely, in a 93A/176D case, the underlying tort claim involves whether the insured was negligent, whether his negligence caused damage and, if so, the extent of the damage. A 93A case requires analysis of whether a separate defendant engaged in an unfair practice in evaluating the plaintiff's claim and the outcome of the tort claim against the insured may be relevant to the 93A case. In such circumstances, authorizing discovery in an unfair settlement claim prior to adjudication or settlement of the underlying tort claim is to litigate the cases in the "wrong order." *Beecher v Pawtucket Mutual Insurance Company*, Appeals Court No.89-J-672. Clearly the Appeals Court has established a well settled protocol that in a 93A/176D case based upon an allegedly low settlement offer by the insurer, the 93A claim should be stayed until the tort action is resolved.

WHEREFORE, the defendant, Commerce, respectfully requests this Court to stay all discovery and litigation directed to Commerce until the underlying personal injury and loss of parental consortium claims are settled or finally adjudicated.

Attorney for the defendants
John F. Hurley, Jr., Esquire
Pojani Hurley Ritter & Salvidio
446 Main Street
Worcester, MA 01608
(508) 798-2480
BBO # 245200

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005, I served a copy of the within Memorandum in Support of Defendant's Memorandum in Support of its Motion to Stay Proceedings upon Chris S. Dodig, Esquire, Donovan & O'Connor, LLP, 1330 Mass. MoCA Way, North Adams, MA 01247 and upon Thomas W. Beliveau, Esquire, Fuller Rosenberg Palmer & Beliveau, 340 Main Street, Worcester, MA 01608, Gerard R. Laurence, Esquire, Milton, Laurence & Dixon, 100 Front Street, Worcester, MA 01608 by mailing same postage prepaid.

_____
John F. Hurley, Jr., Esquire

EXHIBIT A

COMMONWEALTH OF MASS. ...ETTS

APPEALS COURT

No. 84-0138

JACQUELYN R. GROSS, ET AL.

vs.

LIBERTY MUTUAL INSURANCE COMPANY
and
CNA INSURANCE COMPANIES.

MEMORANDUM & ORDER

The petitioner here is CNA Insurance Companies
(CNA). It seeks relief under G. L. c. 231, § 118,
from an order of a Superior Court judge denying a
protective order and, in effect, requiring it to make
discovery from files involving pending litigation.

The action against CNA, brought under G. L. c.
93A, is for failure to make a reasonable offer of
settlement in a tort case. CNA has made an offer of
$40,000. The plaintiffs have rejected this offer and
say that an offer of anything less than the policy
limits ($100,000) is not reasonable.

The case raises interesting issues concerning the
degree to which the lawyer-client privilege may be
penetrated by a party alleging unfair practice by
an insurance company.

In the instant case, however, those questions
have been brought forward prematurely. The significant
fact is that the liability of CNA's insured, and the

ascertain.   Should there be a verdict in favor of
CNA's insured, should there be a verdict within range
of the $40,000 offered, or should there be a settlement
within the range of the $40,000 offered, a claim of
unfair-settlement could scarcely be made out.  Without
intimating that the plaintiff here may properly have
access to CNA's files should the verdict in the
underlying suit be far in excess of CNA's best offer,
I conclude that, in any event, there ought to be no
access to those files until the underlying civil action
(Essex Superior Court Civil No. 81-2314) has been
determined.

Accordingly, I vacate so much of the order of the
Superior Court judge as required CNA to identify and
make available to the plaintiffs every document in
CNA's control which concerns the settlement value and
likelihood of recovery at trial by the plaintiffs
against CNA's insureds and the settlement value and
likelihood of recovery at trial of the Straubs against
the insureds.  Nor shall CNA be required to identify
the persons involved with the valuation of the Gross
and Straub claims.  Nor shall CNA be required to
divulge what persons CNA consulted to determine the
settlement value or probability of recovery at trial
on the Gross and Straub claims.  Nor shall CNA be
required to state what it considers the likelihood
of recovery by the plaintiffs against the insureds.

interrogatories 8, 9, 10, 11, 12, 14, and 15. As to
interrogatory number 13, CNA shall answer what its
record retention policy is. It goes without saying that
CNA is not to destroy any material now in its files
and shall retain such material for six years following
final determination of the tort suit or as a court
otherwise orders. A copy of this order shall be
placed in those files of CNA affected by this order.

By the Court, (Kass, J.),

Assistant Clerk

Entered:    April 24, 1984.

EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PAWTUCKET MUTUAL INSURANCE COMPANY.

MEMORANDUM AND ORDER

It seems apparent that once a tort claim is reported by an insured to the insurance company for a defense and payment if there is liability, the file material accumulated by the insurance company is largely in anticipation of litigation.

It seems equally apparent to me, as set forth in an earlier memorandum and order on the subject in Gross v. Liberty Mut. Ins. Co. and others, single justice docket no. 84-0138, that to authorize discovery in an unfair settlement claim before the underlying claim has been established is to get the cases in the wrong order. The argument that the situation lies otherwise if the injured party has not actually filed a claim in court is unpersuasive. There may be no complaint in court, but there is an underlying claim and, as the insurance company has argued, the distinction would encourage postponement of filing the underlying injury claim in favor of an unfair settlement claim against the insurance company.

order along the lines requested.

If I may be permitted an aside, it seems extraordinary that the insurance company in its memorandum suggests questions in the case about liability. This is a dog bite case. A child has been injured. Absent the most extraordinary circumstances, there is going to be liability and the question is how much are the damages. One would expect conscientous counsel to evaluate the claim and to give the company the benefit of its advice. In terms of the litigation posture of the insurance company, I am struck by the wholly routine nature of its answer to the plaintiffs' complaint against the insurance company.

Upon examination of the papers, which included the helpful memorandum filed by the plaintiff in Superior Court, it is ordered that until the underlying personal injury claim is settled or litigated to judgment, the insurance company need not produce memoranda and notes of its investigators or its lawyers in connection with the concern the claim of Jennifer Belcher against Rodney and Anne Lockyer. The plaintiff may have access to other material.

By the Court (Kass, J.),

*Nancy Truch Foley*

Clerk

Entered:  September 27, 1989.

COM    WEALTH OF MASSACHUSETTS
APPEALS COURT

OCT  6 1989

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PAWTUCKET MUTUAL INSURANCE COMPANY

MOTION FOR RECONSIDERATION

Plaintiff Jennifer Belcher respectfully requests this
Honorable Court to reconsider its decision of September 27,
1989 for the following reasons:

1)  The issue below was not whether discovery can be
authorized in an unfair settlement claim before the underlying
claim has been established;

2)  The issue below was whether or not the defendant met
its burden of proof in claiming work product and
attorney-client privileges;

3)  The defendant failed to meet its burden of proof as
it produced no evidence in support, and accordingly, the trial
court ruled against the defendant on that issue;

4)  The attached case of Sham v. Hyannis Heritage House
Hotel, 118 F.R.D. 24, 26 (D.Mass. 1987) is on point with this
issue.

Ins. Co., single justice docket no. 88-J-24, holds for the plaintiff and is closer to the facts in this action than Gross v. Liberty Mut. Ins. Co., single justice docket no. 84-0138.

Plaintiff respectfully requests this Honorable Court to reconsider its decision of September 27, 1989 in view of the foregoing and affirm the order of the trial court.

APPEALS COURT
Upon consideration of the motion or reconsideration filed by the plaintiff (paper #3), the order of September 7, 1989 is to stand except that the words "the concern" are struck from the last paragraph. The protective rder is narrow.

  ober 6, 1989      Kass, J.
TTEST: _Gabie Quigly_ Asst. Clerk

Respectfully submitted,
By her attorneys,
HAMEL, WAXLER, ALLEN & COLLINS

_Michael J. Underhill_
MICHAEL J. UNDERHILL
7 North Sixth Street
New Bedford, MA 02740
(508) 993-8000
BBO# 545232

Date: October 5, 1989

### Certificate of Service

I certify that a copy of the Motion For Reconsideration was forwarded to the attorney of record, Joseph F. Strumski, Jr., Esq., Morrison, Mahoney & Miller, 700 Pleasant Street, New Bedford, MA 02740, by first class mail, postage prepaid, on this 5th day of October, 1989.

_Michael J. Underhill_
Michael J. Underhill

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

No. 87-0303 Civ.

JANET COYNE

vs.

JAN CO., & another. [1]

ORDER

The petition which was filed in this court on June 5, 1987, came on for hearing on June 16, 1987, and was argued by counsel; thereupon, upon consideration thereof, it is ordered that all discovery by any party with respect to the plaintiff's claims against the defendant Providence Washington Insurance Company in the action numbered 87-1378 on the civil docket of the Superior Court in Bristol County be, and it hereby is stayed until final disposition (by trial, settlement or otherwise) of the plaintiff's claims against the defendant Jan Co., Inc.

By the Court (Grant, J.),

*[signature]*

Assistant Clerk

Entered:   June 16, 1987

_____

. . . . Washington Insurance Company.

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

No.                            92-J-448

GREGORY S. LASSELL

vs.

JOHN A. LAIDLAW
and
COMMERCE INSURANCE COMPANY
d/b/a COMMERCE GROUP, INC.

ORDER

The petition for relief brought under G. L. c. 231,
§ 118, first par., from the denial of the motion to stay
is granted.

The order of the Middlesex Superior Court entered on
case no. MICV92-00490 on that court's docket on May 20,
1992, denying the defendant Commerce Insurance Company's
motion to stay the proceedings brought under G. L.
c. 93A, pending resolution of the underlying bodily
injury claim, is dissolved. A new entry is to be made on
the docket staying the action under G. L. c. 93A, pending
resolution of the underlying bodily injury claim.

By the Court (Perretta, J.),

Clerk

Entered:  July 1, 1992.

—————————— (Cite as: 2003 WL 21212721 (D.Mass.)) ——————————

Not Reported in F.Supp.2d, 2003 WL 21212721 (D.Mass.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
Thaddeus and Lynne RURAK, Plaintiffs,
v.
MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY, a/k/a Promutual Defendant.
No. Civ.A. 02-12274-PBS.
May 19, 2003.

MEMORANDUM AND ORDER

SARIS, J.

                            *INTRODUCTION*

*1

—————————— (Cite as: 2003 WL 21212721, *1 (D.Mass.)) ——————————

Plaintiffs Thaddeus and Lynne Rurak allege that Defendant ProMutual engaged in unfair insurance practices in not resolving a medical malpractice claim when the liability of ProMutual's insured, Dr. Teitler, was reasonably clear. Plaintiffs assert claims under Mass. Gen. L. ch. 176D, § 9 (Count I); Mass. Gen. L. ch. 93A (Count II); and intentional infliction of emotional distress (Count III). Defendant moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for an order to stay the action pending resolution of the underlying malpractice claim. After hearing, the motion to dismiss is *DENIED* in part and *ALLOWED* in part.

                          *FACTUAL BACKGROUND*

With all reasonable inferences drawn in favor of the plaintiffs, the complaint alleges the following facts, many of which are disputed by ProMutual:

On December 8, 2000, Plaintiff Thaddeus Rurak ("Rurak") received emergency medical care from Dr. Ronald Teitler ("Teitler") at Anna Jacques Hospital in Newburyport, Massachusetts. Due to Teitler's negligent treatment, Rurak experienced a heart attack on December 10, 2000, resulting in permanent neurological damage. Teitler was insured by Defendant ProMutual.

In April, 2001, the Ruraks presented a claim to ProMutual under Dr. Teitler's professional liability policy. In August, 2001, the Ruraks supplied ProMutual with the expert report of Dr. Christopher M. Degnan, former Chairman of the Emergency Department at the Lahey Clinic, indicating that Teitler's liability for Rurak's heart attack was reasonably clear. ProMutual then obtained its own expert report, also demonstrating Teitler's liability. In October, 2001, the Ruraks forwarded to ProMutual another expert report by Dr. Gervasimos Zervos, a cardiologist at the Massachusetts General Hospital, stating, "It is beyond doubt that Mr. Rurak been appropriately cared for on December 8, 2000 in the emergency room [by Dr. Teitler], his subsequent cardiac arrest on December 10, 2000 and its consequences as described below would have been prevented." (Par. 14). In the past, Dr. Zervos has been used by ProMutual as its own cardiology expert. In February, 2002, ProMutual received a fourth expert report also indicating that Teitler's liability was reasonably clear.

After waiting fifteen months for a response to their claim, in July, 2002, the Ruraks sent ProMutual a demand letter claiming that ProMutual was violating Mass. Gen. L. c. 93A.

§§ 2 and 9 by engaging in conduct specifically proscribed by Mass. Gen. L. c. 176D, §
3(9). They allege that ProMutual failed to: respond reasonably to communications, and
promptly investigate claims and effectuate a prompt settlement. This stonewalling
compelled the insureds to institute litigation. The letter made a settlement demand in
the amount of one million dollars. ProMutual's response dated October 8, 2002, included
no settlement offer and denied any violations of Mass. Gen. L. c. 176D or c. 93A.
Plaintiffs have not filed a medical malpractice claim against Dr. Teitler.

*STANDARD OF REVIEW*

**\*2**

_____ (Cite as: 2003 WL 21212721, \*2 (D.Mass.)) _____

For purposes of this motion, the Court takes as true "the well-pleaded facts as they
appear in the complaint, extending [the] plaintiff every reasonable inference in [her]
favor." *Coyne v. City of Somerville,* 972 F.2d 440, 442-43 (1st Cir.1992) (citing *Correa-
Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not
be dismissed under Fed.R.Civ.P. 12(b)(6) unless " 'it appears beyond doubt that the
plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to
relief.' " *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v.
Gibson,* 355 U.S. 41, 45-46 (1957)).

*DISCUSSION*

The defendant insurer contends that the complaint must be dismissed or stayed
pending a trial on the medical malpractice claim against Dr. Teitler. Even though the
plaintiffs have not initiated suit against Dr. Teitler, the defendant insists that to allow a
bad faith insurance claim to proceed before a determination of liability against the
doctor would be to put the buggy in front of the horse.

Plaintiffs respond that to stay or dismiss the bad faith insurance claim pending
resolution of a medical malpractice claim in court would frustrate the statutory purpose
to "encourage the settlement of insurance claims" and "discourage insurers from forcing
claimants into unnecessary litigation to obtain relief." *Clegg v. Butler,* 424 Mass. 413,
419, 676 N.E.2d 1134 (1997) (citations omitted).

The Massachusetts Unfair Claims Settlement Practices Act, Mass. Gen. L. ch. 176D, §
3(9)(f) requires an insurance company to "effectuate prompt, fair and equitable
settlements of claims in which liability has become reasonably clear." Liability for
purposes of § 3(9)(f) encompasses both "fault" and "damages." *Clegg,* 424 Mass. at
421. "For purposes of G.L. c. 176D and G.L. c. 93A, damages may be 'reasonably clear'
well before, or indeed in the absence of, a judicial order resolving every contested issue
as to monies owed." *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc .,* 435 Mass. 66,
75-76, 754 N.E.2d 668 (2001). The Supreme Judicial Court has held that a third party
claimant need not successfully litigate an underlying claim by a third party as a
requisite to filing a claim for bad faith insurance practices. *Clegg,* 424 Mass. at 418
(rejecting contention that a third-party claimant has no right to a settlement offer by
the insurer under this statute prior to a trial or entry of judgment). The insurance
company's position flies in the face of Massachusetts caselaw.

Defendant points out that it is "well-established Massachusetts practice" to stay an
action for bad faith insurance practices pending resolution of a medical malpractice
action. This case management technique is sometimes employed to obviate difficult
attorney-client and work product issues. *See e.g., Gross v.. Liberty Mut. Ins. Co.,* 84-
0138, 1984 Mass.App. LEXIS 2011 (Mass.App.Ct. April 24, 1984) (staying order to
produce privileged documents regarding settlement value of case issued against
insurer, pending trial on liability). In addition, a stay may conserve judicial resources.
*See id.* While a court certainly would have the discretion to stay a claim for bad faith
insurance practices pending the resolution of a medical malpractice trial, the court is not
required to do so. In any event, there is no pending medical malpractice action here.
[FN1]

FN1. At oral argument, counsel suggested that a medical malpractice action was unlikely if the Court let this action proceed. If, however, a malpractice action is filed, plaintiff will have to hire new counsel so that the production of privileged materials would not prejudice unfairly the insurance company.

**\*3**

_____ (Cite as: 2003 WL 21212721, \*3 (D.Mass.)) _____

The Court dismisses the claim alleging a violation of Mass. Gen. L. ch. 176D, § 3(9)(g), as this language creates no rights in persons other than the insured. See Jacobs v. Town Clerk of Arlington, 402 Mass. 824, 829, 525 N.E.2d 658 (1988). In addition, the claim of intentional infliction of emotional distress is dismissed.

*ORDER*

The defendants' motion to dismiss is *ALLOWED* with respect to the claims of Mass. Gen. L. ch. 176D § 3(9)(g) and intentional infliction of emotional distress. Otherwise, it is *DENIED.*

D.Mass.,2003.

Rurak v. Medical Professional Mut. Ins. Co.

Not Reported in F.Supp.2d, 2003 WL 21212721 (D.Mass.)

### Motions, Pleadings and Filings (Back to top)

• 1:02cv12274 (Docket) (Nov. 22, 2002)

END OF DOCUMENT