

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

TERIZA SHEHATOU, INDIVIDUALLY, )
CINDY LOUKA P.P.A. TERIZA )
SHEHATOU AND SALLY LOUKA )
P.P.A. TERIZA SHEHATOU, )
Plaintiffs )
)
v. )
) Civil Action No. 05-30195-KPN
CHERYL L. SCHARDT, JAY A. )
HOPKINS, P. KEYBURN HOLLISTER, )
JOHN R. GOBEL, ALLSTATE )
INSURANCE COMPANY and )
COMMERCE INSURANCE COMPANY, )
Defendants )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT COMMERCE INSURANCE CO., INC.'S MOTION TO STAY PROCEEDINGS**

## I. INTRODUCTION

On or about May 21, 2003, an automobile accident occurred at or near the intersection of East Housatonic Street and Wendell Avenue in Pittsfield, Berkshire County, Massachusetts (hereinafter "the Accident"), when a motor vehicle owned by defendant Cheryl Schardt (hereinafter "Schardt"), operated by defendant Jay Hopkins (hereinafter "Hopkins") and insured by defendant Allstate Insurance Company (hereinafter "Allstate") was involved in a collision with a vehicle owned by defendant P. Keyburn Hollister (hereinafter "Hollister"), operated by defendant John R. Gobel (hereinafter "Gobel") and insured by defendant Commerce Insurance Company (hereinafter "Commerce"). At the time of the Accident, Teriza Shehatou was a

restrained passenger in the rear passenger-side seat of the vehicle owned by Hollister. As a result of the Accident, Teriza Shehatou suffered physical injuries and filed a claim in the United States District Court for the District of Massachusetts on behalf of herself and her two minor children, Cindy Louka and Sally Louka (hereinafter "Plaintiffs"), against defendants Schardt, Hopkins, Hollister, Gobel, Allstate and Commerce for negligence, loss of parental consortium and violations of G.L. c. 93A and 176D. Plaintiffs made settlement demands on Commerce and Allstate but, Plaintiffs allege, the insurers have failed to respond to Plaintiffs' demands with reasonable settlement offers.

Teriza Shehatou's injuries include a right rotator cuff tear that required surgical repair six (6) months after the accident. Ms. Shehatou has permanent "marked limitations in external and internal rotation" which effect her daily life as a practicing medical doctor (pathologist) and mother of young children. Her medical expenses equal $21,893.52. The insurers have only offered $36,000.

Plaintiffs are simultaneously pursuing the underlying motor vehicle tort claims and their G.L. c. 93A and 176D claims against the insurance companies. In response, Commerce has filed a Motion to Stay the Proceedings on the G.L. c. 93A and 176D claims until the underlying tort claims are finally adjudicated.

## II. ARGUMENT

### A. PLAINTIFFS PERSONAL INJURY AND G. L. c. 176D CLAIMS SHOULD BE SIMULTANEOUSLY ADJUDICATED

Massachusetts courts have consistently held that claims for bad faith practices pursuant to G. L. c. 93A should generally be settled or adjudicated simultaneously with the underlying tort claim. Wyler v. Bonnell Motors, Inc., 35 Mass. App. Ct. 563, 566 (1993) (holding that "[i]t is

not only possible, but it is the norm as well as the preferred practice for a judge to try common law and c. 93A questions simultaneously."). See also W. Oliver Tripp Company v. American Hoechst Corporation, 34 Mass. App. Ct. 744, 753 (1993); Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 786 (1982); Hall v. Horizon House Microwave, Inc., 24 Mass. App. Ct. 84, 89-90 (1987). Furthermore, when the underlying facts and witnesses are substantially the same, the ". . . bifurcation of [a] common law claim and c. 93A claim has little to recommend it." Wyler, 35 Mass. App. Ct. at 566.

Plaintiffs acknowledge that G. L. c. 176D claims are sometimes "stayed" as a "case management technique . . . to obviate difficult attorney client and work product issues." Rurak v. Medical Professional Mutual Insurance Company, 2003 WL 21212721 (D. Mass – Saris, J). (Attached as Exhibit A.) As Judge Saris observed, however, "[w]hile a court certainly would have the discretion to stay a claim for bad faith insurance practices . . . [the] court is not required to do so." Id. In Rurak, the court allowed the G. L. c. 176D claim to proceed even before the underlying tort claim was filed. Id.

The very purposes of G. L. c. 176D (encouraging settlement and discouraging unnecessary litigation) would be frustrated by the outright stay of the bad faith claims. If the court were to stay the claims, then Plaintiffs would be motivated to proceed to trial on the underlying tort claim so that the trial judgment would serve as the single damages in the subsequent G. L. c. 176D action. If the claims proceed through discovery at the same time, then "global" settlement can be considered.

WHEREFORE, Plaintiffs respectfully request this court deny defendant Commerce Insurance Company, Inc.'s Motion to Stay Proceedings relative to defendant Commerce,

including any discovery as to defendant Commerce, until the underlying personal injury and loss of consortium counts are settled or finally adjudicated.

Dated: 11-1-05

PLAINTIFFS

By their attorney,

Chris S. Dodig
BBO No. 556628

For Donovan & O'Connor, LLP
1330 Mass MoCA Way
North Adams, MA 01247
Tel No. (413) 663-3200
Fax No. (413) 663-7970

CERTIFICATE OF SERVICE

I hereby certify that on 11-1-05, I have caused the foregoing document to be served on the parties to this matter by mailing a true copy, postage prepaid, to John F. Hurley, Jr., Esq., Pojani, Hurley, Ritter & Salvidio, LLP, 446 Main Street, 21st Floor, Worcester, MA 01608; Thomas Beliveau, Esq., Fuller, Rosenberg, Palmer & Beliveau, LLP, 340 Main Street, Suite 817, Worcester, MA 01608; Gerard S. Laurence, Esq., Milton, Laurence & Dixon, 100 Front Street, Suite 1510, Worcester, MA 01608; and Kevin G. Murphy, Esq., Pessolano, Dusel, Murphy & Casartello, P.C., 115 State Street, Fifth Floor, Springfield, MA 01103.

Chris S. Dodig

JAC:jll

# EXHIBIT A

Not Reported in F.Supp.2d, 2003 WL 21212721 (D.Mass.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
Thaddeus and Lynne RURAK, Plaintiffs,
v.
MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY, a/k/a Promutual Defendant.
No. Civ.A. 02-12274-PBS.
May 19, 2003.

MEMORANDUM AND ORDER

SARIS, J.

*INTRODUCTION*

***1**



Plaintiffs Thaddeus and Lynne Rurak allege that Defendant ProMutual engaged in unfair insurance practices in not resolving a medical malpractice claim when the liability of ProMutual's insured, Dr. Teitler, was reasonably clear. Plaintiffs assert claims under Mass. Gen. L. ch. 176D, § 9 (Count I); Mass. Gen. L. ch. 93A (Count II); and intentional infliction of emotional distress (Count III). Defendant moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for an order to stay the action pending resolution of the underlying malpractice claim. After hearing, the motion to dismiss is *DENIED* in part and *ALLOWED* in part.

*FACTUAL BACKGROUND*

With all reasonable inferences drawn in favor of the plaintiffs, the complaint alleges the following facts, many of which are disputed by ProMutual:

On December 8, 2000, Plaintiff Thaddeus Rurak ("Rurak") received emergency medical care from Dr. Ronald Teitler ("Teitler") at Anna Jacques Hospital in Newburyport, Massachusetts. Due to Teitler's negligent treatment, Rurak experienced a heart attack on December 10, 2000, resulting in permanent neurological damage. Teitler was insured by Defendant ProMutual.

In April, 2001, the Ruraks presented a claim to ProMutual under Dr. Teitler's professional liability policy. In August, 2001, the Ruraks supplied ProMutual with the expert report of Dr. Christopher M. Degnan, former Chairman of the Emergency Department at the Lahey Clinic, indicating that Teitler's liability for Rurak's heart attack was reasonably clear. ProMutual then obtained its own expert report, also demonstrating Teitler's liability. In October, 2001, the Ruraks forwarded to ProMutual another expert report by Dr. Gervasimos Zervos, a cardiologist at the Massachusetts General Hospital, stating, "It is beyond doubt that had Mr. Rurak been appropriately cared for on December 8, 2000 in the emergency room [by Dr. Teitler], his subsequent cardiac arrest on December 10, 2000 and its consequences as described below would have been prevented." (Par. 14). In the past, Dr. Zervos has been used by ProMutual as its own cardiology expert. In February, 2002, ProMutual received a fourth expert report also indicating that Teitler's liability was reasonably clear.

After waiting fifteen months for a response to their claim, in July, 2002, the Ruraks sent ProMutual a demand letter claiming that ProMutual was violating Mass. Gen. L. c. 93A,

§§ 2 and 9 by engaging in conduct specifically proscribed by Mass. Gen. L. c. 176D, § 3(9). They allege that ProMutual failed to: respond reasonably to communications, and promptly investigate claims and effectuate a prompt settlement. This stonewalling compelled the Insureds to institute litigation. The letter made a settlement demand in the amount of one million dollars. ProMutual's response dated October 8, 2002, included no settlement offer and denied any violations of Mass. Gen. L. c. 176D or c. 93A. Plaintiffs have not filed a medical malpractice claim against Dr. Teitler.

*STANDARD OF REVIEW*

***2**



For purposes of this motion, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in [her] favor." *Coyne v. City of Somerville*, 972 F.2d 440, 442-43 (1st Cir.1992) (citing *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." ' *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

*DISCUSSION*

The defendant insurer contends that the complaint must be dismissed or stayed pending a trial on the medical malpractice claim against Dr. Teitler. Even though the plaintiffs have not initiated suit against Dr. Teitler, the defendant insists that to allow a bad faith insurance claim to proceed before a determination of liability against the doctor would be to put the buggy in front of the horse.

Plaintiffs respond that to stay or dismiss the bad faith insurance claim pending resolution of a medical malpractice claim in court would frustrate the statutory purpose to "encourage the settlement of insurance claims" and "discourage insurers from forcing claimants into unnecessary litigation to obtain relief." *Clegg v. Butler*, 424 Mass. 413, 419, 676 N.E.2d 1134 (1997) (citations omitted).

The Massachusetts Unfair Claims Settlement Practices Act, Mass. Gen. L. ch. 176D, § 3(9)(f) requires an insurance company to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Liability for purposes of § 3(9)(f) encompasses both "fault" and "damages." *Clegg*, 424 Mass. at 421. "For purposes of G.L. c. 176D and G.L. c. 93A, damages may be 'reasonably clear' well before, or indeed in the absence of, a judicial order resolving every contested issue as to monies owed." *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 435 Mass. 66, 75-76, 754 N.E.2d 668 (2001). The Supreme Judicial Court has held that a third party claimant need not successfully litigate an underlying claim by a third party as a requisite to filing a claim for bad faith insurance practices. *Clegg*, 424 Mass. at 418 (rejecting contention that a third-party claimant has no right to a settlement offer by the insurer under this statute prior to a trial or entry of judgment). The insurance company's position flies in the face of Massachusetts caselaw.

Defendant points out that it is "well-established Massachusetts practice" to stay an action for bad faith insurance practices pending resolution of a medical malpractice action. This case management technique is sometimes employed to obviate difficult attorney-client and work product issues. *See e.g., Gross v.. Liberty Mut. Ins. Co.*, 84-0138, 1984 Mass.App. LEXIS 2011 (Mass.App.Ct. April 24, 1984) (staying order to produce privileged documents regarding settlement value of case issued against insurer, pending trial on liability). In addition, a stay may conserve judicial resources. *See id.* While a court certainly would have the discretion to stay a claim for bad faith insurance practices pending the resolution of a medical malpractice trial, the court is not required to do so. In any event, there is no pending medical malpractice action here. [FN1]

FN1. At oral argument, counsel suggested that a medical malpractice action was unlikely if the Court let this action proceed. If, however, a malpractice action is filed, plaintiff will have to hire new counsel so that the production of privileged materials would not prejudice unfairly the insurance company.

***3**

(Cite as: 2003 WL 21212721, *3 (D.Mass.))

The Court dismisses the claim alleging a violation of Mass. Gen. L. ch. 176D, § 3(9)(g), as this language creates no rights in persons other than the insured. *See* *Jacobs v. Town Clerk of Arlington*, 402 Mass. 824, 829, 525 N.E.2d 658 (1988). In addition, the claim of intentional infliction of emotional distress is dismissed.

*ORDER*

The defendants' motion to dismiss is *ALLOWED* with respect to the claims of Mass. Gen. L. ch. 176D § 3(9)(g) and intentional infliction of emotional distress. Otherwise, it is *DENIED*.

D.Mass.,2003.

Rurak v. Medical Professional Mut. Ins. Co.

Not Reported in F.Supp.2d, 2003 WL 21212721 (D.Mass.)

**Motions, Pleadings and Filings** **(Back to top)**

- 1:02cv12274 (Docket) (Nov. 22, 2002)

END OF DOCUMENT